FREUND & BRACKEY LLP
Thomas A. Brackey II (SBN 162279)
 *tbrackey@freundandbrackey.com*
Stephen P. Crump (SBN 251712)
 *scrump@freundandbrackey.com*
Joshua G. Zetlin (SBN 273086)
 *jzetlin@freundandbrackey.com*
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Defendants,
 GLORIA HINOJOSA and
 AMSEL, EISENSTADT, FRAZIER & HINOJOSA TALENT AGENCY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITN FLIX, LLC, a Utah limited liability company; and GIL MEDINA, an individual;<br><br>       Plaintiffs,<br><br>   v.<br><br>GLORIA HINOJOSA, an individual, et al.;<br><br>       Defendants. | Case No.: CV14-8797-ODW-RZx<br><br>**REPLY OF GLORIA HINOJOSA AND AMSEL, EISENSTADT, FRAZIER & HINOJOSA TALENT AGENCY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 8(a)(2)**<br><br>Date:    April 13, 2015<br>Time:    1:30 p.m.<br>Ctrm.:    11 |

Defendants GLORIA HINOJOSA and AMSEL, EISENSTADT, FRAZIER & HINOJOSA TALENT AGENCY (collectively referred to herein as "Hinojosa") hereby file the following Reply to Plaintiffs ITN FLIX, LLC and GIL MEDINA (collectively referred to herein as "Medina")'s Opposition to the Motion to Dismiss the Complaint under Rules 12(b)(6) and 8(a)(2) (the "Motion"):

///

///

///

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................1

II. LEGAL ARGUMENT..........................................................................................2

    A. **The Agreements Underlying the *Vengeance* Franchise are Unenforceable and Cannot Support Tort Relief.**......................................2

        *1.   The Acting Agreement and the MLA are fatally vague.*...............3

        *2.   The Contracts at Issue are Unlawful Restraints of Trade Under California Law.*.............................................................................6

    B. **Medina's Intentional Interference Claims Fail.**.......................................8

    C. **The Copyright Act Preempts Medina's Claims.**.....................................9

    D. **Even if There is a Viable Cause of Action for Unjust Enrichment in California, Medina has Failed to Allege an Unjust Retention of Benefits by Hinojosa and AEFH.**...................................................................10

    E. **Medina has not Stated a Viable Claim for Negligence.**........................11

III. CONCLUSION..................................................................................................12

*Freund & Brackey LLP*
*427 North Camden Drive*
*Beverly Hills, CA 90210*

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).................................................................................11

*BDO Seidman v. Hirshberg*
   712 N.E.2d 1220 (N.Y. 1999).....................................................................7

*Biakanja v. Irving*
   49 Cal. 2d 647 (1958)...............................................................................11

*Bily v. Arthur Young & Co.*
   3 Cal. 4th 370 (1992)..........................................................................11 n.8

*Brown v. Allstate Ins. Co.*
   17 F. Supp. 2d 1134 (S.D. Cal. 1998).........................................................8

*Business to Business Markets, Inc. v. Zurich Specialties*
   135 Cal. App. 4th 165 (2005).............................................................11 n.8

*Campbell v. Bd. of Trustees of Leland Stanford Jr. Univ.*
   817 F.2d 499 (9th Cir. 1987)..................................................................7 n.5

*Casden Builders, Inc. v. Entre Prises USA, Inc.*
   2010 U.S. Dist. LEXIS 82423 (C.D. Cal. Jul. 21, 2010).........................11

*Casey v. Olson*
   2010 U.S. Dist. LEXIS 93222 (S.D. Cal. Sept. 7, 2010)....................8 n.6

*Del Madera Prop. v. Rhodes & Gardner, Inc.*
   820 F.2d 973 (9th Cir. Cal. 1987)...............................................................9

*Downing v. Abercrombie & Fitch*
   265 F.3d 994 (9th Cir. 2001).................................................................9 n.7

*Eads v. Marks*
   39 Cal. 2d 807 (2002)........................................................................11 n.8

*Edwards v. Arthur Anderson LLP*
   44 Cal. 4th 937 (Cal. 2008)...........................................................7, 7 n.5

*Fisher v. Dees*
    794 F.2d 432 (9th Cir. Cal. 1986)..................................................................9

*Fleet v. CBS*
    50 Cal. App. 4th 1911 (1996).......................................................................9

*Gen. Comm. Packaging v. TPS Package*
    126 F.3d 1131 (9th Cir. 1997)..................................................................7 n.5

*Homedics, Inc. v. Valley Forge Ins. Co.*
    315 F.3d 1135 (9th Cir. 2003)..................................................................8 n.6

*In re Carrere*
    64 B.R. 156 (C.D. Cal. 1986).......................................................................6

*Johnson v. Fankell*
    520 U.S. 911 (1997)..................................................................................

*King v. Gerold*
    109 Cal. App. 2d 316 (1952)...................................................................7 n.5

*Kolani v. Giuska*
    64 Cal. App. 4th 402 (1998).........................................................................7

*Madison Square Garden Boxing, Inc. v. Shavers*
    434 F. Supp. 449 (S.D.N.Y. 1977)...............................................................7

*Mark Tanner Const. v. Hub Int'l Ins. Serv.*
    224 Cal. App. 4th 574 (2014)..................................................................12 n.9

*MGM Studios Inc. v. Grokster, Ltd.*
    545 U.S. 913 (U.S. 2005).............................................................................10

*Norman I. Krug Real Estate Inv., Inc. v. Praszker*
    220 Cal. App. 3d 35 (1990)......................................................................11 n.8

*Pac. Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Serv. West, Inc.*
    203 Cal. App. 4th 1278 (2012).................................................................12 n.9

*Polydoros v. Twentieth Century Fox Film Corp.*
    67 Cal. App. 4th 318 (1998)......................................................................9 n.7

*Raia v. Village of Skokie*
    1995 U.S. Dist. LEXIS 16028 (N.D. Ill. Oct. 26, 1995)................................................5

*Sater v. Chrysler Group LLC*
    2015 U.S. Dist. LEXIS 21022 (C.D. Cal. Feb. 20, 2015)........................................10

*Scott v. Snelling & Snelling, Inc.*
    732 F. Supp. 1034 (1990)..................................................................................6 n.4

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*
    107 Cal. App. 4th 54 (2003)............................................................................11 n.8

*Steinberg Moorad & Dunn, Inc. v. Dunn*
    136 Fed. Appx. 6 (9th Cir. Cal. 2005).......................................................................7

*Warner Brothers Pictures, Inc. v. Brodel*
    31 Cal. 2d 766 (1948)..................................................................................................6

*Youst v. Longo*
    43 Cal. 3d. 64 (1987)..................................................................................................8

*Zink Commc'ns v. Elliott*
    1990 WL 176382 (S.D.N.Y. 1990)............................................................................7

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. Cal. 2001)............................................................................8

**STATUTES**

California Business & Professions Code
    Section 16500..................................................................................................

California Civil Code
    Section 1598.............................................................................................................5

United States Code
    Title 17
        Section 102.............................................................................................................9
        Section 106...........................................................................................................10
        Section 301.............................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The claims advanced in Medina's Complaint fail in several critical respects.

First, the alleged agreements between Medina and actor Danny Trejo ("Trejo") at the core of Medina's *Vengeance* film franchise are unenforceable. Not only do these documents fail to set forth sufficiently certain terms to create a contract, they place an unlawful restraint on Trejo, effectively prohibiting him from plying his trade. Since these alleged agreements cannot form the basis of an enforceable contract, Medina cannot allege that Hinojosa misrepresented his rights to a third party or that Rodriguez's release of *Machete* constituted an infringement. Each of Medina's claims should be dismissed on this basis alone.

Secondly, Medina fails to state an adequate claim for tortious interference. Looking strictly at his California law cause of action,[1] Medina does not adequately allege several key elements. For one, he alleges merely a *possibility* of economic relations with third-party distributors for his *Vengeance* franchise. California law requires such a relationship to be *probable* (more likely than not) and it requires the defendant to know about it. Medina has not met either element here. Finally, even if Medina can sufficiently allege a prospective economic relationship with Steve Wozniak ("Wozniak"), who purportedly lent his name and likeness to a *Vengeance* mobile app, Medina has failed to allege how this relationship was affected in any meaningful manner by Hinojosa's alleged remarks to Wozniak. According to Medina's own allegations, Wozniak's name and likeness remain prominently featured in the *Vengeance* app, which is still being sold today. Medina's claims for tortious interference fail for these reasons.

Next, to the extent that Medina bases his claims on an alleged conspiracy between Hinojosa and Rodriguez to release the *Machete* franchise, these claims are contributory copyright infringement disguised as torts. Medina seeks to protect rights to a copyrightable character in a film that have been violated because Rodriguez allegedly

---

[1] Medina's Utah claim should be dismissed under conflicts of law principles.

appropriated this character for his own film franchise. Medina alleges that Hinojosa induced this conduct. This is a textbook claim for contributory copyright infringement and should be stated as such under the doctrine of preemption. Medina's claims for unjust enrichment, violation of the Lanham Act and negligence, to the extent they are based on the release of *Machete*, fail for this reason.

Medina's "cause of action" for unjust enrichment should also be dismissed simply because such a cause of action does not exist under California law. Moreover, even if the Court were to disregard this as a technicality, Medina has failed to allege, beyond a threadbare legal recital, how Hinojosa unjustly retained any benefits from their alleged efforts to undermine work for their own client. The cause of action for unjust enrichment should be dismissed for these reasons.

As for the cause of action for negligence against Hinojosa, Medina's Complaint attempts to stretch the frontiers of what constitutes a tort duty far beyond any precedent in this state. Medina would have this Court impose an affirmative duty on Hinojosa to police the rights of third-party movie producers. Such a duty has no precedent in California and runs contrary to the duties of a talent agent to her own client.

For these reasons, and because the Complaint violates Federal Rule of Civil Procedure 8(a)(2) as argued in the Motion, the Complaint should be dismissed in its entirety.

## II.   LEGAL ARGUMENT

### A.   The Agreements Underlying the *Vengeance* Franchise are Unenforceable and Cannot Support Tort Relief.

Medina's tort claims against Hinojosa are founded on his alleged rights to a Trejo vigilante character and film franchise under the Master License Agreement ("MLA") and the Acting Agreement. (*See* Docket No. 1 "Complaint" at ¶ 25). However, since these agreements are unenforceable on their face, they cannot support such relief.

Though Medina contends the Court cannot base a dismissal of his tort claims against Hinojosa solely on the basis of these agreements, now arguing there are "additional

terms" to the parties' overall relationship that could inform the issue, this argument is unavailing. The fact is, each of the key terms of the "Vigilante/Trejo Film Franchise listed in paragraph 25 of the Complaint is memorialized in these documents.[2] If there are indeed other material terms that somehow cure an otherwise unenforceable agreement, they must be alleged in the Complaint. It is not the duty of either Defendants or this Court to divine Medina's intentions beyond what is pled in the Complaint.

Moreover, the MLA, which provides the sole basis for Medina's claim to licensing rights for Trejo's right of publicity, contains an integration clause stating that it represents the "sole and entire agreement between the parties" and requires modifications to be in writing. (*See* MLA at §§ 12(j) and 12(q)).

The MLA and the Acting Agreement contain the material terms of the alleged contract between Medina and Trejo. If these key agreements are found to be unenforceable, Medina cannot bring tort claims against Hinojosa and AEFH based on the "Vigilante/Trejo Film Franchise."

### 1. *The Acting Agreement and the MLA are fatally vague.*

The crucial terms of the Acting Agreement and the MLA are not sufficiently defined to provide a rational basis for the assessment for damages, rendering these agreements vague and incapable of supporting tort claims against third parties.

The Acting Agreement prohibits Trejo from "play[ing] *any* vigilante characters that *may hurt the 'Jack's Law' films/properties or any films that may be similar to 'Jack's Law' to the public*." (*See* Acting Agreement, Exhibit 3 to Motion, Docket No. 33-3 at p. 1) (emphasis added).[3] Even if the Court could adequately define what a "vigilante character" is according to its "ordinary and popular" definition—what is a vigilante character that "hurts" the *Vengeance* films/properties? Presumably this would *not* include Trejo's appearance as a vigilante character in films that "help" *Vengeance*. Moreover, it is unclear whether Trejo is also forbidden from playing vigilantes in films that may be "similar" to

---

[2] *See* Complaint at ¶ 25.
[3] Medina and Trejo's alleged film originally had the working title *Jack's Law* which was later changed to *Vengeance*. *See* Complaint at ¶ 22.

*Vengeance* or from playing *any character* in a film that is "similar" to *Vengeance*. The terms of the purported agreement are so ill-defined they cannot support a contractual obligation.

The MLA, for its part, has three fundamental uncertainties, which when taken together, render the agreement fatally vague: (1) the identity of the Licensor and the Licensee; (2) the identity of the payor and the payee; and (3) the exclusivity of the License.

The "Basic Business Terms" of the MLA define a non-existent entity "ITN, LLC" as the Licensor and Trejo as the Licensee, (*See* MLA, Exhibit 2 to Motion, Docket No. 33-2 at p. 1) while the "Standard Terms and Conditions" define "ITN, LLC" as the Licensee and Trejo as the Licensor. (*See id.* p. 3 § 1). Leaving aside for the moment that ITN, LLC never existed, Medina argues this is "obviously" a scrivener's error and contends that the definition in the Standard Terms and Conditions should control. (*See* Opposition to Motion to Dismiss Complaint, Docket No. 42 ("Opp.") at 10:8–12).

However, this allegedly simple error gives rise to a more significant issue when the court tries to determine which way the payment obligations flow. According to Medina's "proper" definitions in the Standard Terms and Conditions, ITN, LLC, the licensee, owes Trejo, the licensor, a five percent (5%) royalty for its exploitation of his name and likeness. (*See* MLA at p. 3, § 3(a)). However, in the Complaint, Medina actually alleges the opposite, namely that *Trejo* is obligated to pay ITN, LLC a royalty of five percent (5%) for any exploitation of his name and likeness. (*See* Complaint at 7:21–23). Since the MLA clearly only provides for payments flowing in one direction, from licensee to licensor—which definition should control? Under the terms of the MLA, is ITN, LLC supposed to exploit Trejo's right of publicity and then account and pay Trejo? This is the meaning Medina ascribes to the contract. Yet, Medina claims the reverse in his Complaint, claiming that Trejo is supposed to pay ITN, LLC in clear contravention of the Licensor/Licensee identification argued by Medina in the context of this Motion.

If this were not confusing enough, there remains the issue of exclusivity. The Basic Business Terms of the MLA contain no reference to the agreement being exclusive in the

grant of rights section, or anywhere else. However, the Standard Terms and Conditions provide that the agreement is in fact exclusive. (*See* MLA at p. 3 § 2). But in the event of a conflict between the Basic Business Terms and the Standard Terms and Conditions, the Basic Business Terms control. (*Id.* at p. 3 § 1). Assuming the court could make a determination as to whether the MLA grants an exclusive license to ITN, LLC, the issue is key. If Trejo is not prohibited from exploiting his own name and likeness, then he, as licensor, has no contractual obligation to pay ITN, LLC, the licensee.

Of course, in the context of a licensing agreement, these are not collateral terms; rather, they go to the very core of the relationship. What is the scope of the rights granted? Who is the licensor? Who pays whom? And is the agreement exclusive or not? Since these crucial terms in the MLA are so hopelessly muddled, the agreement does not evidence a meeting of the minds and thus the scope of the duty and limits of acceptable performance are not sufficiently defined to provide a "rational basis for the assessment of damages."

As a final matter, extrinsic evidence is not proper to resolve questions of vagueness. While a court may consider extrinsic evidence to *interpret* ambiguous terms in an existing contract, a court may not *create* a contract by inserting caveats and explanations based on implications found in the parties' conduct. *See* Cal. Civ. Code § 1598; *Raia v. Village of Skokie*, 1995 U.S. Dist. LEXIS 16028 at *32–33 (N.D. Ill. Oct. 26, 1995) (explaining distinction between vagueness and ambiguity in contracts). Therefore to the extent Medina cites cases dealing with ambiguities in existing contracts, these cases should be disregarded in their entirety.

The MLA and the Acting Agreement are fatally vague and cannot support tort claims against Hinojosa and AEFH based thereon.

///
///

    **2.**    ***The Contracts at Issue are Unlawful Restraints of Trade Under California Law.***

The Acting Agreement and the MLA are also unlawful restraints of trade under California law[4]—as they effectively prevent Trejo from engaging in a wide swathe of professional activities.

The Acting Agreement, for its part, purports to prohibit Trejo, a screen actor, from engaging in any film roles that are "similar" to all Medina's *Vengeance* properties, both present and future (only one of five films was alleged to be produced) for an undefined period of time, presumably for the remainder of Trejo's acting career. (*See* Acting Agreement at p. 1). Meanwhile, the MLA, according to its terms, grants ITN, LLC the exclusive right to control the use of Trejo's name, likeness and voice in connection with *all categories of goods and services*. (*See* MLA at p. 1 §§ 1, 2, p. 3 § 2). These are quintessential restraints of trade and cannot support enforceable contractual obligations.

Medina contends that despite California's strong policy against covenants not to compete, certain narrow restraints in the entertainment industry are allowed to simply fall through the cracks. This is incorrect. In *Warner Brothers Pictures, Inc. v. Brodel*, a 1948 case, the decision turned on whether a minor had the right to disaffirm a personal services contract approved by the Los Angeles Superior Court under former Civil Code sections 35 and 36. In *dicta*, the court acknowledged that equity supported the employer's right to enjoin his employee from breaching such an agreement. 31 Cal. 2d 766, 773–774 (1948). *In re Carrere* turned on whether a bankruptcy debtor could disaffirm a contract under Civil Code section 3423, which sets forth specific restrictions for personal services contracts which may be enforced by injunction (e.g. inadequacy of damages and a set pay-scale of minimum compensation per year). 64 B.R. 156, 160 (C.D. Cal. 1986). Even if the MLA or the Acting Agreement qualified for specific enforcement under these statutes (they do not), Trejo is not a defendant in this lawsuit. *See Steinberg Moorad & Dunn, Inc. v. Dunn*,

---

[4] California law should apply to both the MLA and the Acting Agreement. Overwhelming California policy regarding restraints of trade dictates that section 16600 applies to *any sort of contract* with a California citizen which contains a covenant restraining competition, *even contracts with forum selection clauses selecting a sister state's law*. *Scott v. Snelling & Snelling, Inc.* 732 F. Supp. 1034, 1039–1041 (1990). As the Acting Agreement purports to bind Trejo, a California motion picture actor, California law should apply to the Acting Agreement as a matter of law.

136 Fed. Appx. 6, 10–11 (9th Cir. Cal. 2005) (Section 3423 arguments not applicable outside narrow employer injunction context).

To the extent that Medina cites New York authority—e.g. *Madison Square Garden Boxing, Inc. v. Shavers,* 434 F. Supp. 449 (S.D.N.Y. 1977) and *Zink Commc'ns v. Elliott,* 1990 WL 176382 at *1 (S.D.N.Y. 1990)—these cases are inapposite. New York law, contrary to California law, permits reasonable restraints on covenants not to compete. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1222–1223 (N.Y. 1999). This approach that has been specifically rejected in California. *See Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 945 (Cal. 2008).

The remaining cases cited in the Opposition discuss a "narrow restraint" test developed by the Ninth Circuit which was also expressly rejected by the California Supreme Court and thus should be inapplicable here. *See Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 948–949 (2008).[5]

Finally, Medina's tortured interpretation of what the MLA really does (which is contrary to its allegations in the Complaint) cannot save this agreement from running afoul of California Business & Professions Code section 16500. A party may not simply reform a contract restraining trade by construing it more narrowly in allegations or argument. *See Kolani v. Giuska*, 64 Cal. App. 4th 402, 407–408 (1998). The MLA is not limited to "merchandising, commercial, or personal appearance deals," as Medina argues, but rather applies to "all categories of goods and services." (*See* MLA at p. 1 § 2)

Since the MLA and Acting Agreement both prevent Trejo from freely engaging in his profession as a motion picture actor, they are unlawful restraints of trade under

---

[5] *Edwards* stated unequivocally that *"*California courts have not embraced the Ninth Circuit's narrow restraint exception" and "no reported California state court decision has endorsed the Ninth Circuit's reasoning, and we are of the view that California courts 'have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat.'") *Id.* (expressly disapproving *King v. Gerold*, 109 Cal. App. 2d 316 (1952), *Campbell v. Board of Trustees of Leland Stanford Junior University*, 817 F.2d 499 (9th Cir. 1987) and *General Commercial Packaging v. TPS Package*, 126 F.3d 1131 (9th Cir. 1997) (all cases cited in Opposition) for the proposition that they support a narrow restraint theory).

California Business and Professions Code section 16600 and cannot support tort claims against Hinojosa and AEFH.

### B. Medina's Intentional Interference Claims Fail.

Medina's misplaced cause of action for economic interference under Utah law should be dismissed and his remaining California cause of action fails to state a claim upon which relief may be granted.

Regardless of any difference between Utah and California law on the distinct issue of restraints on trade, courts are to look at conflicts issue by issue (*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. Cal. 2001)), and Medina has not identified an actual conflict between California and Utah law on the specific issue of whether there has been a *tortious interference*. Since there is no conflict, the Court should apply California law to the cause of action for tortious interference and dismiss the Utah claim as superfluous.[6]

With respect to Medina's remaining claim for tortious interference under California law, his claim fails in several crucial respects: for one, his so-called "potential" agreements with unnamed third-parties for the release of *Vengeance* do not rise to the level of a prospective economic advantage under California law. *See Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998); *see also Youst v. Longo*, 43 Cal. 3d. 64, 71 n.6 (1987).

Secondly, even if these potential arrangements could support a tortious interference claim, Medina has failed to make any *factual, non-conclusory* allegations that Hinojosa had specific knowledge of these potential agreements and disrupted them. Indeed, shortly after Hinojosa purportedly told the Wozniaks Trejo did not have an enforceable agreement with ITN (Complaint at ¶ 57), the *Vengeance* mobile application still "was in fact released and prominently features the Wozniaks' personas, and remains available on iTunes even to this day." (*Id.* ¶ 61). Other than the bare conclusion that Medina "lost millions of dollars

---

[6] *See Casey v. Olson*, 2010 U.S. Dist. LEXIS 93222 (S.D. Cal. Sept. 7, 2010) (citing *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003)) (when no meaningful conflict of law identified, California courts should apply forum law).

as a result," there is no plausible connection made between the alleged remarks to the Wozniaks and any damage to the *Vengeance* film franchise. There is simply not enough factual allegations in the Complaint to support a plausible claim for intentional interference with prospective economic advantage on the part of Hinojosa.

### C. The Copyright Act Preempts Medina's Claims.

Medina's sixth, seventh and ninth causes of action, to the extent they are based on Rodriguez's release of the *Machete* franchise, are really claims for contributory copyright infringement thinly veiled as state law claims. As such, they are preempted by the Copyright Act and must be dismissed.

Under the preemption doctrine, the states may not protect intellectual property rights that fall anywhere within the scope of federal copyright law. 17 U.S.C. § 301; *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir. Cal. 1986). Under the Ninth Circuit's characterization of the two-part test for preemption: (1) the content at issue must come within the "subject matter of copyright" as defined in Sections 102 and 103 of the Copyright Act; and (2) the rights asserted under state law must be equivalent to the exclusive rights granted to copyright holders under Section 106 of the Copyright Act. *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. Cal. 1987).

With regard to the initial element, Medina bases his claims on his rights to a motion picture film entitled *Vengeance* featuring a vigilante character played by Trejo.[7] (*See* Complaint at ¶ 26). As motion pictures (and characters in motion pictures) fall directly under the subject matter of copyright protection, it is clear that the first part of the preemption test is satisfied. *See* 17 U.S.C. § 102; *Fleet v. CBS*, 50 Cal. App. 4th 1911, 1919–1920 (1996) (holding that an actor's performance on film is copyrightable).

With respect to the second part of the preemption test, Medina asserts rights equivalent to those exclusively held by copyright owners—the right to copy and make

---

[7] To the extent that Medina argues that his claims are in fact based on Trejo's name and likeness and thus not preempted (citing *Downing v. Abercrombie & Fitch*)—this position is untenable. As discussed in depth in the case of *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318 (1998), the right of publicity is not implicated in the context of protected First Amendment speech, specifically motion pictures. *Id.* at 323–324.

derivatives of a work. 17 U.S.C. § 106. The crux of Medina's claims against Rodriguez is that Rodriguez had access to a copyrightable work (*Vengeance*) and he subsequently released a motion picture (*Machete*) which was allegedly similar to *Vengeance*—all without Medina's permission. (*See* Complaint at ¶¶ 23, 36:2–7, 37:24–26, 39:11-12, 41:16-18, 42:23-27; Opp. at p. 19:6-9). This is a clear-cut allegation of copyright infringement. To the extent the Complaint alleges that *Hinojosa* conspired with Rodriguez to engage in this wrongful conduct or idly sat by while he did so (*Id.* at 36:2–7, 37:25–27, 42:23–27) this constitutes the basis for a *contributory* copyright infringement claim. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (U.S. 2005).

Specifically, Medina's claims for unjust enrichment, violation of the Lanham Act and negligence rely upon: (1) Rodriguez's access to *Vengeance*; (2) Hinojosa's alleged disregard of Medina's purportedly exclusive rights to a Trejo vigilante character; (3) the self-described striking similarity between *Vengeance* and *Machete*; (4) profits that flowed from the release of *Machete*; and (5) alleged harm to the marketability of *Vengeance*. Each of these claims relate to the subject matter of copyright and assert rights equivalent to the exclusive rights granted to copyright holders. Hence, as long as Medina's sixth, seventh and ninth causes of action seek damages or restitution flowing from Hinojosa's involvement in the release of *Machete,* these claims are necessarily preempted by the Copyright Act.

**D.** **Even if There is a Viable Cause of Action for Unjust Enrichment in California, Medina has Failed to Allege an Unjust Retention of Benefits by Hinojosa and AEFH.**

California does not recognize an independent cause of action for unjust enrichment. *Sater v. Chrysler Group LLC,* 2015 U.S. Dist. LEXIS 21022 at *38–39 (C.D. Cal. Feb. 20, 2015). However, even if the Court were to disregard this as a technicality—Medina must at least plead "receipt of a benefit and unjust retention of the benefit at the expense of another." *Casden Builders, Inc. v. Entre Prises USA, Inc.*, 2010 U.S. Dist. LEXIS 82423 at *18–20 (C.D. Cal. Jul. 21, 2010) (Judge Wright, presiding). Medina has failed to do so

here.

Instead, Medina makes the bare, conclusory allegation that "Defendants have received benefits and unjustly retained them at the expense of PLAINTIFFS." (Complaint at ¶ 102). This is not supported by any well-pleaded factual allegation in the Complaint. Since the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," no circumstances are alleged that would necessitate restitution. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009); *Casden Builders, Inc.*, 2010 U.S. Dist. LEXIS 82423 at *20. Medina's improper cause of action for unjust enrichment should accordingly be dismissed.

### E. Medina has not Stated a Viable Claim for Negligence.

Medina cannot state a cause of action for negligence against Hinojosa and AEFH for breaching an affirmative duty to inform the world of his agreements with Trejo.

There is no case law that supports a talent agent's affirmative duty to protect the interests of third-party movie producers under these factual circumstances. *Biakanja v. Irving*, which did indeed set forth a balancing test to determine whether a defendant could be liable to a third party not in privity, dealt with the limited situation in which a professional *negligently performed a contractual obligation or violated an ethical obligation*. 49 Cal. 2d 647, 649–650 (1958) (notary public who negligently undertook to draft will was liable to third-party beneficiary). Indeed, each of the cases Medina cites that applied the *Biakanja* test dealt in this limited context.[8]

On the contrary, California cases have consistently held that *Biakanja* does *not* apply to cases which involve a failure to act affirmatively, outside of a contractual

---

[8] *Business to Business Markets, Inc. v. Zurich Specialties*, 135 Cal. App. 4th 165 (2005) (broker who negligently procured a policy that did not cover insured liable to third-party beneficiary); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992) (accountant who negligently made misstatements in audit report liable to third parties); *Norman I. Krug Real Estate Inv., Inc. v. Praszker*, 220 Cal. App. 3d 35 (1990); *Eads v. Marks*, 39 Cal. 2d 807, 811 (2002) (real estate broker who negligently failed to disclose prior lien on property liable to junior security holder); *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54 (2003) (attorney who misrepresented policy limits in settlement discussions liable to opposing party).

obligation.[9]

Here, Hinojosa and AEFH, as talent agents for Trejo, admittedly have a duty of utmost care towards their client. This duty cannot possibly run to everyone who does business with Trejo. Moreover, there are simply no allegations in the Complaint that Hinojosa and AEFH *negligently performed their contractual and ethical obligations to Trejo* such that harm to a third-party such as Medina would be foreseeable. *Biakanja* does not apply and Medina cites no additional authority to support an affirmative duty on the part of a talent agent to protect the interests of third-party producers. Accordingly, Medina cannot state a cause of action for negligence.

### III. CONCLUSION

For all the foregoing reasons and those stated in Hinojosa and AEFH's Motion to Dismiss, this matter should be dismissed under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) in its entirety.

DATED: March 30, 2015                              FREUND & BRACKEY LLP

                                               By:    /Stephen P. Crump/
                                                        Thomas A. Brackey II,
                                                        Stephen P. Crump,
                                                        Joshua G. Zetlin
                                                        Attorneys for Defendants
                                                        GLORIA HINOJOSA and
                                                        AMSEL, EISENSTADT,
                                                        FRAZIER & HINOJOSA
                                                        TALENT AGENCY

---

[9] *See Mark Tanner Const. v. Hub Int'l Ins. Serv.*, 224 Cal. App. 4th 574, 587 (2014) (insurance broker not liable to insured for failing to ascertain affirmatively the financial soundness of insurer); *Pac. Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Serv. West, Inc.*, 203 Cal. App. 4th 1278, 1291–1292 (2012) (same).