# United States District Court
# Central District of California

| | |
|---|---|
| ITN FLIX, LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GLORIA HINOJOSA, et al.,<br><br>    Defendants. | Case № 2:14-CV-08797-ODW (AGRx)<br><br>**ORDER GRANTING MOTION TO DISMISS AND/OR STRIKE [107], GRANTING MOTION TO DISMISS [109], AND DENYING AS MOOT MOTION TO STRIKE [110]** |

## I. INTRODUCTION

This action is a long-running business dispute involving independent film producer Gil Medina, actor Danny Trejo, director Robert Rodriguez, and talent agent Gloria Hinojosa. Medina and his production company, ITN Flix, LLC, developed the vigilante-action film *Vengeance* starring Trejo and assert that Rodriguez and Hinojosa interfered with *Vengeance's* successful release. For the reasons discussed below, the Court **GRANTS** Defendants' motions to dismiss and/or strike (ECF Nos. 107, 109), and **DENIES** as moot Defendants Hinojosa and Amstel, Eisenstadt, Frazier & Hinojosa Talent Agency's ("AEFH") Motion to Strike (ECF No. 110).[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

**A. Factual Background**

Medina "was and is an independent filmmaker" and is a principal and managing member of ITN Flix, LLC ("ITN"), an independent production company located in Utah (Medina and ITN collectively are "Plaintiffs"). (First Am. Compl. ("FAC") ¶¶ 7–8, ECF No. 93.) Around 2004 to 2005, Medina pitched to Trejo the idea of a vigilante action movie starring Trejo, eventually titled *Vengeance*. (FAC ¶¶ 64, 66.) Trejo agreed to the project as both the lead actor and as a producer. (FAC ¶ 66.) Thereafter, in 2006, Plaintiffs and Trejo entered into two written agreements: a Master Licensing Agreement ("MLA") and an Acting Agreement (collectively "2006 Agreements"). (FAC ¶¶ 112, 124.) The 2006 Agreements included exclusivity provisions restricting Trejo's rights of publicity and acting services to Plaintiffs, including not playing any other vigilante character through at least 2013.[2] However, in 2009, Trejo agreed to star in *Machete*, a vigilante action film directed and produced by Rodriguez. (FAC ¶ 155.) Plaintiffs and Trejo agreed that Trejo would perform in *Machete* and continue to work on *Vengeance*, which Trejo did. (FAC ¶ 156.)

In approximately May 2012, Rodriguez Defendants[3] decided to produce a sequel to *Machete*, entitled *Machete Kills*, again casting Trejo. (FAC ¶¶ 176, 182.) Thus, in the spring and summer of 2012, Plaintiffs expressed concern that Trejo's involvement on *Machete Kills* would affect his availability to work on *Vengeance*. (FAC ¶ 186.) Accordingly, Plaintiffs allege that "at about this time," they reached a "new agreement" (the "2012 Agreement"). (FAC ¶ 190.) Plaintiffs allege that in the 2012 Agreement, Trejo:

> specifically promised and committed to Plaintiffs that Trejo would do at least the following:
> - Continue to film new scenes for the film as needed.

---

[2] As detailed below, the Ninth Circuit affirmed that the 2006 Agreements are unenforceable as unlawful restraints on trade. *See ITN Flix, LLC v. Hinojosa*, 686 F. App'x. 441, 443 (9th Cir. 2017).
[3] "Rodriguez Defendants" include Rodriguez and production company Defendants Machete Kills, LLC; El Chignon, Inc.; Troublemaker Studios, L.P.; and Quick Draw Productions, LLC.

- Continue to lend the active support of his name, likeness, and celebrity to the project, including to promotional, marketing and publicity activities "all the way to the bank," meaning throughout the release and monetization process of the film.
- Continue to support the film actively as both an actor and producer.
- Make himself available and use his best efforts to support the development, production and release of the film, including specifically a release essentially concurrently with the initial theatrical release of *Machete Kills*.
- Continue to work with Plaintiffs on their personal appearances and commercial work.
- Trejo would continue to facilitate and allow Plaintiffs to maintain and exploit Trejo social media which Plaintiffs had already built, including reasonable extensions thereof.

(FAC ¶ 190.) Plaintiffs agreed to "continue to put financial and other resources into the Vengeance project" and not to pursue any form of lawsuit or enforcement regarding the 2006 Agreements. (FAC ¶ 190.) These terms are substantially identical to the terms of the 2006 Agreements, with the exception of exclusivity. (*Compare* FAC ¶ 125 *with* ¶ 190.) Plaintiffs allege on information and belief that Trejo "told both Hinojosa[4] and Rodriguez at the time about the essential terms" of the 2012 Agreement. (FAC ¶ 195.)

In August 2012, Medina met Steve and Janet Wozniak and conceived an "innovative marketing strategy" wherein the Wozniaks would appear in an added scene in the film and in a mobile app game tied to *Vengeance* (the "App Game"). (FAC ¶¶ 197, 200, 213.) The Wozniaks "intended to and wanted to" make personal appearances to support the App Game and film. (FAC ¶ 237.) Plaintiffs allege on information and belief that Trejo "kept Rodriguez . . . and Hinojosa informed, including about this development." (FAC ¶ 202.) The Wozniaks filmed the game scenes and made other contributions, and the App Game was released and available in the app store for years. (FAC ¶¶ 212, 243.)

---

[4] "Hinojosa Defendants" include Hinojosa and AEFH.

3

About this time, Trejo informed Plaintiffs that Defendants forbid him to work with Plaintiffs on *Vengeance*. (FAC ¶¶ 208–09, 224.) As a result, the new film scene with the Wozniaks was never completed. (FAC ¶ 209.) Additionally, one of the defendants or someone acting on their behalf contacted the Wozniaks via telephone or Facebook private message and insinuated that Medina was a con man and Trejo was not involved with the App Game. (FAC ¶¶ 223, 225–35.) Thereafter, the Wozniaks withdrew their active support for the project. (FAC ¶ 237.)

Plaintiffs assert that their marketing plan involving the App Game and the Wozniaks allowed them to negotiate "potential agreements with theatrical exhibitors and other distributors for a meaningful commercial release" of *Vengeance* in early 2013. (FAC ¶ 216.) Despite not entering into any of these agreements, Plaintiffs claim that, by November 2012, they had "a realistic expectation of earning millions of dollars in revenue imminently from both the App Game itself and from a meaningful commercial release" of *Vengeance* in early 2013. (FAC ¶ 217.) However, Trejo's and the Wozniaks' withdrawn support of the App Game and film caused offers for the film to be reduced significantly or withdrawn altogether. (FAC ¶ 249.) Plaintiffs claim that "if the Wozniaks had actively supported the [A]pp [G]ame, Plaintiffs would have made in at least the hundreds of thousands of dollars from the App Game alone." (FAC ¶ 211.) Plaintiffs allege damages in the millions of dollars, including funds they invested and expended on the *Vengeance* project as well as the millions in expected profits from the App Game and film. (FAC ¶ 245.)

**B.     Procedural Background**

In November 2014, Plaintiffs filed this action asserting nine claims against various Defendants premised on the 2006 Agreements and generally the same facts as detailed above, without the 2012 Agreement. (*See* Compl., ECF No. 1.) In May 2015, the Court dismissed Plaintiffs' Complaint, finding, among other things, that the 2006 Agreements were unenforceable as unlawful restraints on trade. (Order Granting Defs.' Mots. to Dismiss 14, ECF No. 75.)

Plaintiffs appealed and Rodriguez Defendants cross-appealed. (Notices of Appeal, ECF Nos. 77, 79.) On April 4, 2017, the Ninth Circuit issued its decision. *See ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441 (9th Cir. 2017). The Ninth Circuit affirmed that the 2006 Agreements were unenforceable, unlawful restraints on trade and affirmed dismissal of the complaint. *Id.* at 443–45. However, the Ninth Circuit found that Plaintiffs should have been granted limited leave to amend the first and fifth claims. *Id.* at 444–45. The Ninth Circuit issued its Mandate on August 16, 2017. (Mandate, ECF No. 92.)

On October 29, 2018, fourteen months later, Plaintiffs filed their FAC. Plaintiffs assert two claims in their FAC: (1) Intentional Interference with Contract against Rodriguez Defendants, and (2) Intentional Interference with Prospective Economic Advantage against both Hinojosa Defendants and Rodriguez Defendants. (FAC ¶¶ 264–85, 286–307.) Defendants now move to dismiss and/or strike Plaintiffs' FAC. (*See* Rodriguez Defs.' Mot. to Dismiss and/or Strike ("Rodriguez Mot."), ECF No. 107; Hinojosa Defs.' Mot. to Dismiss ("Hinojosa Mot."), ECF No. 109; Hinojosa Mot. to Strike, ECF No. 110.)

### III. REQUEST FOR JUDICIAL NOTICE [108, 111, 122, 128]

The parties seek judicial notice of numerous court filings and orders in the appeal of this action, related actions before the United States District Court for the District of Utah, and a related JAMS arbitration. (*See generally* Rodriguez Req. for Judicial Notice ("RJN"), ECF No. 108; Hinojosa RJN, ECF No. 111; Pls.' RJN, ECF No. 122; Rodriguez Suppl. RJN, ECF No. 128.)

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Court orders and filings are proper subjects of judicial notice. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Courts may take judicial notice of pleadings and court orders filed in other

courts, "both within and without the federal judicial system, if those proceedings" are directly related to the matters at issue. *Id.* (citing *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).) However, a court may take judicial notice only of the existence of these documents and not the truth of disputed facts therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). With this in mind, as each of the documents the parties seek to have the court notice is a court filing, court order, or arbitration document related to the matters at issue here, the Court grants the Requests as to the existence of these documents.

### IV. MOTIONS TO DISMISS AND TO STRIKE [107, 109, 110]

Rodriguez Defendants and Hinojosa Defendants[5] each move to dismiss Plaintiffs' FAC on various grounds, many overlapping. Both sets of defendants argue that Plaintiffs' FAC should be dismissed, in whole or in part, for amendment beyond the Ninth Circuit's Mandate, failure to diligently prosecute under Federal Rule of Civil Procedure ("Rule") 41(b), and failure to state a claim. Rodriguez Defendants also move to strike the portions of Plaintiffs' FAC they contend were amended beyond the Ninth Circuit's Mandate, and Hinojosa Defendants move to strike Plaintiffs' request for costs and punitive damages. As the Court finds dismissal appropriate due to lack of diligent prosecution and failure to state a claim, the Court does not reach Defendants' additional arguments.

**A.   Ninth Circuit Memorandum**

Defendants move to dismiss and/or strike on the basis that Plaintiffs amended beyond the scope permitted. (Rodriguez Mot. 22–23; Hinojosa Mot. 5–7.)

Under the "Rule of Mandate," the district court should "implement both the letter and the spirit of the mandate, taking into account the [Ninth Circuit's] opinion

---

[5] Hinojosa Defendants' moving and reply papers in connection with their motion to dismiss fail to comply with this Court's local rules. The motion uses a font smaller than permitted, and the reply exceeds the twelve-page limit. (*See* Hinojosa Mot.; Hinojosa Reply in Supp. of Mot. ("Hinojosa Reply"), ECF No. 124.) Accordingly, the Court does not consider pages thirteen through twenty-four of Hinojosa Defendants' Reply.

and the circumstances it embraces." *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080 (9th Cir. 2010) (quoting *Vizcaino v. U.S. District Court*, 173 F.3d 713, 719 (9th Cir. 1999)). This Court has flexibility to enter orders, consider evidence and do other things to implement the mandate, so long as they are not "counter to the spirit of the circuit court's decision." *United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000) (internal quotation marks omitted); *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007). "Although amendment of pleadings following remand may be permitted, such amendment cannot be inconsistent with the appellate court's mandate." *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984). A district court may not reconsider "matters which were either expressly or implicitly disposed of upon appeal." *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987).

The Ninth Circuit affirmed dismissal of all claims but found limited leave to amend warranted for the first and fifth causes of action. *ITN Flix*, 686 F. App'x at 444–45. As to the first, Plaintiff's initially asserted this cause of action for intentional interference with contract against Rodriguez Defendants. (Compl. ¶¶ 68–75.) The Ninth Circuit affirmed dismissal but permitted leave to amend "because it does not appear futile that [Medina] could plead facts establishing an oral contract with Trejo to market and promote [Plaintiffs'] film." *ITN Flix*, 686 F. App'x at 444. Rodriguez Defendants argue Plaintiffs were permitted to amend only to the extent they could allege facts supporting an oral promise "not reflected in the written contracts." (Rodriguez Mot. 13.) However, the language "not reflected in the alleged written contracts" appears in the paragraph affirming dismissal, not in the paragraph granting leave to amend. If the Ninth Circuit meant to limit leave to amend to "an oral contract with Trejo to market and promote his films (not reflected in the written contracts)," it could certainly have said so. It did not. Accordingly, Plaintiffs' are permitted to plead a cause of action against Rodriguez Defendants for intentional interference with an oral agreement between Trejo and Plaintiffs for Trejo to market and promote Plaintiffs' film *Vengeance*.

Regarding the fifth cause of action, Plaintiffs initially asserted this cause of action for intentional interference with prospective economic advantage against only Hinojosa Defendants. (Compl. ¶¶ 94–100.) Plaintiffs now assert this cause of action as their second and bring it against both Hinojosa Defendants and Rodriguez Defendants. (FAC ¶¶ 286–307.) However, Plaintiffs initially, separately, asserted the same cause of action against Rodriguez Defendants as Plaintiffs' third cause of action, of which the Ninth Circuit affirmed dismissal *without* leave to amend. (Compl. ¶¶ 81–88); *ITN Flix*, 686 F. App'x at 444. Accordingly, Plaintiffs may not now assert this cause of action against Rodriguez Defendants. The Court thus **STRIKES** as impertinent and beyond the scope of the Mandate Plaintiffs' second cause of action to the extent it is brought against Rodriguez Defendants.

Additionally, the Ninth Circuit affirmed dismissal of Plaintiffs' fifth cause of action to the extent it was based on "Hinojosa facilitating Trejo's casting in Rodriguez's movies," "the Wozniaks' failure to provide marketing and promotional support to Medina's App Game," or "any economic relationship with unnamed potential exhibitors and distributors." *ITN Flix*, 686 F. App'x at 445. The Ninth Circuit permitted amendment of this cause of action because "it does not appear futile that [Medina] could plead facts about the Wozniaks' promises to provide marketing or support." *Id.* Plaintiffs may not now revive those aspects of the fifth cause of action for which the Ninth Circuit did not grant leave to amend. The Court thus **STRIKES** as impertinent and beyond the scope of the Mandate Plaintiffs' second cause of action to the extent it alleges intentional interference with prospective economic advantage other than the Wozniaks' alleged promises to provide marketing or support for the App Game.

Accordingly, and for clarity, Plaintiffs' FAC may plead the following two permitted causes of action: (1) intentional interference with an oral agreement between Trejo and Plaintiffs for Trejo to market and promote Plaintiffs' film *Vengeance*, against Rodriguez Defendants; and (2) intentional interference with

prospective economic advantage with the Wozniaks as to their alleged promises to provide marketing or support for the App Game, against Hinojosa Defendants.

**B.     Rule 41(b) and Local Rule 41-1**

Defendants move to dismiss Plaintiffs' FAC pursuant to Rule 41(b) and Local Rule 41-1 for failure to diligently prosecute. (Rodriguez Mot. 24; Hinojosa Mot. 5.) Federal Rule of Civil Procedure 41(b) allows a party, or the Court, to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." This rule is interpreted to require "reasonable diligence" in prosecution. *Anderson v. AirWest, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). Local Rule 41-1 provides that "[c]ivil suits which have been pending for an unreasonable period of time without any action having been taken therein may, after notice, be dismissed for want of prosecution." C.D. Cal. L.R. 41-1. Thus, "[a] Rule 41(b) dismissal 'must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).

The Ninth Circuit issued its Memorandum on April 4, 2017, and its Mandate on August 16, 2017. Plaintiffs did not file their FAC until October 29, 2018. Plaintiffs concede they delayed more than fourteen months after the Mandate before filing the amended complaint but argue the delay should be excused as the result of Plaintiffs' financial difficulties and two months of settlement discussions. (Opp'n to Hinojosa Mot. 16–18, ECF No. 119; Opp'n to Rodriguez Mot. 24–25, ECF No. 117.) Defendants refute the assertions of settlement talks (*see* Hinojosa Reply 7; Rodriguez Reply in Supp. of Mot. ("Rodriguez Reply") 11, ECF No. 126), and Plaintiffs concede that financial difficulties alone are insufficient to warrant such stagnation in prosecution (*see* Opp'n to Hinojosa Mot. 16). *See Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) (finding that plaintiff's lack of financial resources did not excuse delay). Further, Plaintiffs pursued other federal litigation concerning these films during the time period Plaintiffs were "unable" to pursue this litigation,

demonstrating Plaintiffs' choice to prioritize other litigation. (*See* Rodriguez Reply 11.) Finally, even assuming Plaintiffs engaged in negotiations with some of the defendants for two months before amending, this does not excuse Plaintiff's prior, year-long delay. Thus, the Court finds Plaintiffs' delay unreasonable.

When dismissing an action under Rule 41(b), courts must consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Henderson*, 779 F.2d at 1423); *see also Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 651 (9th Cir. 1991). The Ninth Circuit affirms "a dismissal where at least four factors support dismissal, . . . or where at least three factors 'strongly' support dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (alterations in original) (internal quotation marks omitted). "[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Morris*, 942 F.2d at 651 (internal quotation marks omitted).

The Ninth Circuit has recognized that the first and fourth factors cut in opposite directions. *See Yourish*, 191 F.3d at 990 (first factor always weighs in favor of dismissal); *Hernandez*, 138 F.3d at 401 (fourth factor always weighs against dismissal). Although the fourth factor always weighs against dismissal, the plaintiff is charged with moving the action towards that disposition with reasonable diligence. *Morris*, 942 F.2d at 652. Plaintiffs failed for more than a year to do so here, and thus this factor weighs only slightly against dismissal.

The second factor considers a court's need to manage its own docket. The Court must manage its docket to ensure efficient provision of justice. A district court is in the best position to evaluate the effects of delay on the docket. *Yourish*, 191 F.3d at 991; *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994). Plaintiffs' additional delay of

fourteen months unreasonably caused this litigation to stagnate and impeded resolution of the action for over a year. Accordingly, the second factor weighs in favor of dismissal.

The third factor considers the risk of prejudice to Defendants. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. "Whether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse for the [delay]." *Id.* Here, Plaintiffs have no excuse for the delay in amending their complaint. The failure to amend in a reasonable time delayed resolution of the action and prevented Defendants from defending against Plaintiffs' amended claims, thus interfering with the rightful disposition of the case. What is more, Plaintiffs' disregard for the Ninth Circuit's explicit order as to the scope of amendment forced Defendants to again defend, and this Court to wade through, claims already dismissed and affirmed. Plaintiffs' year-long delay following remand also increases the likelihood that witnesses memories will fade and material evidence will become stale. "The law presumes injury from unreasonable delay." *In re Eisen*, 31 F.3d at 1452 (quoting *Anderson*, 542 F.2d at 524). The Court finds the risk of prejudice to Defendants, both presumed and actual, weighs in favor of granting dismissal.

Finally, the fifth factor considers the availability of less drastic alternatives. "The district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson*, 779 F.2d 1421, 1424 (9th Cir. 1986); *see also Morris*, 942 F.2d at 652 (quoting *Anderson*, 542 F.2d at 525 ("There is no requirement that every single alternate remedy be examined by the court before the sanction of dismissal is appropriate. The reasonable exploration of possible and meaningful alternatives is all

that is required.").[6]  Here, Plaintiffs assert financial difficulties, so imposing a fine would merely compound hardship and potentially further delay, as would placing the case at the bottom of the calendar.  Plaintiffs' disingenuous disregard for the Ninth Circuit's limitations for amendment on remand demonstrates that a mere warning or formal reprimand would also be ineffective.  And dismissal without prejudice would not function as a lesser sanction, as it appears the time may have run on Plaintiffs' claims.  *See* Cal. Civ. Proc. Code § 339 (two-year statute of limitations for contract claims).  Thus, this factor also weighs in favor of dismissal.

As four factors weigh in favor of dismissal and one factor weighs slightly against, the Court finds dismissal warranted under Rule 41(b) and **GRANTS** Defendants' motions to dismiss.  However, in an abundance of caution, and in light of the Ninth Circuit Mandate granting narrow leave to amend, the Court also considers Defendants' arguments under Rule 12(b)(6).

## C. Rule 12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

---

[6] The Ninth Circuit has recognized less drastic alternatives may include "a warning, a formal reprimand, placing a case at the bottom of the calendar, a fine, the imposition of costs or attorney fees," temporary suspension of counsel from practice, and preclusion of claims or defenses.  *See Malone*, 833 F.2d at 132 n.1.

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court is generally limited to the pleadings in ruling on a Rule 12(b)(6) motion but may consider documents properly subject to judicial notice without converting a motion to dismiss into one for summary judgment. *See Lee*, 250 F.3d at 688–89.

Defendants argue that Plaintiffs' allegations in the FAC concerning the 2012 Agreement and its premise of non-exclusivity are inconsistent with the complaint's allegations of the (unenforceable) 2006 Agreements. Generally, an amended complaint should contain "additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 955 (9th Cir. 2011) (internal quotation marks omitted). However, as the parties note, Ninth Circuit precedent is inconsistent as to whether amended pleadings may ever contradict earlier allegations. *Compare Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (disallowing contradictory amendment) *with PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (finding it error to strike inconsistent pleadings). Regardless, a court may consider prior pleadings in determining the plausibility of an amended complaint. *See Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015). Accordingly, the Court considers Plaintiffs' initial complaint as part of the "context-specific" inquiry into the plausibility of Plaintiffs' amended claims.

### 1. First Cause of Action against Rodriguez Defendants

Plaintiffs' first cause of action is against Rodriguez Defendants for intentional interference with an oral contract between Trejo and Plaintiffs for Trejo to market and promote Plaintiffs' film *Vengeance*. To state this claim, a plaintiff must allege facts sufficient to establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). To establish a valid contract, California law requires parties capable of contracting, mutual consent, a lawful object, and consideration. Cal. Civ. Code § 1550.

Here, the Ninth Circuit found that Plaintiffs' first cause of action failed because Plaintiffs "identifie[d] no consideration paid to or breach by Trejo" in their complaint. *ITN Flix*, 686 F. App'x at 444. In the FAC, Plaintiffs again fail to sufficiently allege consideration.

Plaintiffs allege that they and Trejo reached the 2012 Agreement "at about this time," which appears to mean somewhere around spring or summer of 2012. (FAC ¶¶ 186, 190.) Although Plaintiffs do not allege precisely where or when they entered the 2012 Agreement, they allege a laundry list of Trejo's obligations, most of which require Trejo to continue doing things he was already doing, like "[c]ontinue to film new scenes," "[c]ontinue to support the film actively," and "[c]ontinue to lend the active support of his name, likeness and celebrity to the project, including to promotional, marketing and publicity activities."[7] (FAC ¶ 190.) Plaintiffs contend they provided valid consideration by "continu[ing] to put financial and other resources into the Vengeance project" and foregoing their right to sue on the 2006 Agreements. (*See* FAC ¶ 190.)

To begin, an offer of consideration must be sufficiently definite that the

---

[7] Trejo's obligations appear to expand over time. (*Compare* FAC ¶ 190 *with* ¶ 266.)

performance promised is reasonably certain. Thus, indefinite consideration cannot provide the basis for mutual assent necessary to form an agreement. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("If . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract."). Plaintiffs contend their promise to continue putting "financial and other resources in the Vengeance project" constitutes valid consideration, but this vague promise does not sufficiently define Plaintiffs' obligation. "Financial and other resources" is indefinite, for instance, as to the amount of funds or type of resources promised, and thus does not permit a determination of whether Plaintiffs have met this commitment or breached it.

Further, "[c]ompromise of a wholly invalid claim, one with no foundation, is not valid consideration." *Murphy v. T. Rowe Price Prime Reserve Fund, Inc.*, 8 F.3d 1420, 1423 (9th Cir. 1993). Although "the relinquishment of a *colorable* legal claim is valid consideration," to be colorable, "a claim must be asserted in good faith and must be legally tenable under the theory advanced." *Id.* (internal quotation marks omitted); *Prop. Cal. SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1167 n.7 (2018). Here, Plaintiffs' claim of exclusivity was not colorable, and thus forgoing enforcement did not constitute valid consideration. Long-standing and settled law establishes that exclusivity provisions such as those in the 2006 Agreements constitute unenforceable unlawful restraints on trade, contrary to public policy. *See ITN Flix*, 686 F. App'x at 443–44 (citing *Kelton v. Stravinski*, 138 Cal. App. 4th 941, 946 (2006)) ("[W]hen a contract creates an illegal restraint on trade, there is nothing that the parties can do that will in any way add to its validity."). "A contract made contrary to public policy or against the express mandate of a statute may not serve as the foundation of any action . . . ." *Kelton*, 138 Cal. App. 4th at 949 (internal quotation marks omitted). Thus, Plaintiffs' alleged offer to surrender a wholly invalid claim, one with no foundation that was not colorable, was not valid consideration.

Plaintiffs fail to sufficiently allege consideration for the 2012 Agreement with Trejo. Thus, no contract was formed, and Plaintiffs' first cause of action fails. Accordingly, the Court **GRANTS** Rodriguez Defendants' motion to dismiss Plaintiffs' first claim.

*2. Second Cause of Action against Hinojosa Defendants*

Plaintiffs' second cause of action is against Hinojosa Defendants for intentional interference with prospective economic advantage as to the Wozniaks' alleged promises to provide marketing or support for the App Game. To state this claim, Plaintiffs must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.* 42 Cal. App. 4th 507, 521–22 (1995)). The first element has two parts: "(1) an existing economic relationship that (2) contains the probability of an economic benefit to the plaintiff." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). The claim fails "when either the economic relationship with a third party is too attenuated or the probability of economic benefit too speculative." *Id.* at 515.

The Ninth Circuit previously affirmed dismissal of this claim because Plaintiffs did "not allege facts to show the requisite probability of future economic benefit," and granted leave to amend to "plead facts about the Wozniaks' promises to provide marketing or support" for the App Game. *ITN Flix*, 686 F. App'x at 445.

Plaintiffs allege that the Wozniaks agreed to appear in a scene in the film initially as a favor to a friend and later for their own enthusiasm (FAC ¶ 200); they filmed scenes and made other contributions to App Game, which was released and available in the App Store for years (FAC ¶¶ 212, 243); and they "intended to and

wanted to" do personal appearances to support the App Game, but later withdrew their active support (FAC ¶¶ 237, 243). However, Plaintiffs do not allege any promises by the Wozniaks to market or support the App Game, or facts supporting the existence of an economic relationship with the Wozniaks.

Additionally, Plaintiffs again also fail to allege facts supporting the requisite probability that any such relationship would yield future economic benefit. Plaintiffs allege that "[b]ased on the performance of other similar app games with supported marketing, if the Wozniaks had actively supported the [A]pp [G]ame, Plaintiffs would have made in at least the hundreds of thousands of dollars from the App Game alone." (FAC ¶ 211.) But Plaintiffs provide no support for this assertion. *See Westside Ctr. Assocs.*, 42 Cal. App. 4th at 527 (internal quotation marks omitted) ("Without an existing relationship with an identifiable buyer, [plaintiff]'s expectation of a future sale was at most a hope for an economic relationship and a desire for future benefit.").

Plaintiffs fail to sufficiently allege an economic relationship with the Wozniaks with the probability of future economic benefit to Plaintiffs. Accordingly, the Court **GRANTS** Hinojosa Defendants' motion to dismiss Plaintiffs' second cause of action.[8]

   3. *Leave to Amend*

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In evaluating the propriety of leave to amend, the Ninth Circuit considers five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether plaintiff previously amended his complaint. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013)). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."

---

[8] As the Court grants dismissal of Plaintiffs' second cause of action, Hinojosa Defendants' motion to strike Plaintiffs' request for costs and punitive damages is **DENIED** as **MOOT**. (ECF No. 110.)

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Plaintiffs request leave to amend in the conclusion of their oppositions. As discussed above, Plaintiffs delayed unreasonably for over a year in filing the FAC and Defendants have been prejudiced, by both the delay and having to defend against claims already dismissed and affirmed. Although the Court declines to find bad faith, Plaintiffs' disingenuous disregard for the Ninth Circuit's orders limiting the scope of amendment raises concern. Further, the Ninth Circuit explicitly directed Plaintiffs to the deficient aspects of Plaintiffs' claims, yet Plaintiffs failed to remedy the identified deficiencies, focusing instead on developing theories previously dismissed. "At some point there must be finality." *In re Beverly Hills Bancorp*, 752 F.2d at 1337. Accordingly, the Court **DENIES** leave to amend.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motions to Dismiss **without leave to amend** (ECF Nos. 107, 109) and **DENIES** Hinojosa Defendants' Motion to Strike as Moot (ECF No. 110.)

**IT IS SO ORDERED.**

August 6, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**