# United States District Court
# Central District of California

| | |
|---|---|
| ITN FLIX, LLC, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>GLORIA HINOJOSA, et al.,<br><br>      Defendants. | Case No.: 2:14-CV-08797-ODW (AGRx)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS [143]** |

## I. INTRODUCTION

Following the Court's Order Granting, In Part, Defendants Robert Rodriguez, Machete Kills, LLC, El Chingon, Inc., Troublemaker Studios, L.P., and Quick Draw Productions, LLC's (collectively, "Defendants") Special Motion to Strike Pursuant to California's Anti-SLAPP Statute ("Anti-SLAPP Order," ECF No. 136), Defendants moved to recover their attorneys' fees and costs (Mot. for Att'y's Fees ("Mot."), ECF No. 143.) Defendants seek an award of $341,778.19 in attorneys' fees and $1595.54 in costs as the prevailing party under California Code of Civil Procedure section 425.16. (Mot. 1.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court recited this case's extensive factual and procedural background in its orders granting Defendants' motions to dismiss and strike. (*See* Order Granting Defs.' Mots. To Dismiss, 2–7, ECF No. 75; Order Granting Defs.' Mot. To Dismiss 2–5, ECF No. 135.) The Court again detailed that background in its August 6, 2019 Anti-SLAPP Order. (*See* Anti-SLAPP Order 2–3.) The Court incorporates that discussion here and provides the following additional background.

On January 23, 2015, Defendants filed their Motion to Strike Pursuant to California's Anti-SLAPP Statute ("Anti-SLAPP Motion"). (*See* Anti-SLAPP Motion, ECF No. 34.) On May 13, 2015 the Court dismissed Plaintiffs' Complaint without leave to amend for failure to state a claim. (*See* Order Granting Defs.' Mots. To Dismiss, ECF No. 75.) On appeal, the Ninth Circuit granted Plaintiffs leave to amend and remanded the Anti-SLAPP Motion, stating in part that this Court must consider an award of attorneys' fees if it granted the Anti-SLAPP Motion. Defendants then filed a Motion for a Ruling on the Anti-SLAPP Motion ("Renewed Anti-SLAPP Motion"). (*See* Renewed Anti-SLAPP Motion, ECF No. 116.) On August 6, 2019 the Court granted, in part, Defendants' Anti-SLAPP Motion. (*See* Anti-SLAPP Order 1.) The Court determined that Plaintiffs' first, second, third, sixth, eighth, and ninth causes of action arose from activity taken in furtherance of Defendants' free speech rights—namely, casting, creating, producing, and distributing films—and therefore struck those claims to the extent they challenged Defendants' exercise of free speech rights. (Anti-SLAPP Order 10.) The Court further recognized that because "Defendants prevailed on their anti-SLAPP motion, they are entitled to their attorneys' fees and costs." (Anti-SLAPP Order 11.)

Defendants now move to recover their attorneys' fees and costs because they were the prevailing party on the Anti-SLAPP Motion. (*See generally* Mot.)

### III. LEGAL STANDARD

California's anti-SLAPP (Strategic Lawsuit against Public Participation) statute allows defendants to make a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); *see also Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases"). "[A] prevailing defendant on a special motion to strike shall be entitled to recover [its] attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.").

**A.  Prevailing Party**

A party that partially prevails on an anti-SLAPP motion "must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006). Here, Plaintiffs expressly concede that Defendants partially prevailed on their Anti-SLAPP Motion and are entitled to an award of fees and costs. (*See* Opp'n to Mot. ("Opp'n") 1, ECF No. 144.) Defendants are therefore entitled to reasonable attorneys' fees and costs.

**B.  Reasonableness of Hours**

The party seeking attorneys' fees and costs bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001) (internal quotation marks omitted). A reasonable fee is determined by the lodestar figure, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Additionally, a party who prevails on an anti-SLAPP motion is entitled to recover

attorneys' fees "to establish and defend the fee claim," also known as "fees on fees." *Ketchum*, 24 Cal. 4th at 1141. "A prevailing defendant is also entitled to appellate attorney fees and costs." *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002).

Here, Plaintiffs concede the "reasonableness of the hourly billing rates" of Defendants' counsel and that "lodestar can be an appropriate calculation methodology." (Opp'n 1.) In fact, Plaintiffs admit that Defendants are entitled to at least $166,995.02 in fees, rather than the $343,373.73 Defendants request. (Opp'n 21.) Hence, the only inquiry before the Court is the reasonableness of the hours expended by Defendants' counsel on the relevant motions and appellate proceedings.

Defendants' counsel claim they collectively spent more than 741 hours on the initial Anti-SLAPP Motion, the appellate proceedings, the Renewed Anti-SLAPP Motion, and the instant fee Motion (as shown below). (Mot. 1; *see* Decl. of Joel R. Weiner ("Weiner Decl."), ECF No. 143.) "As a further gesture to simplify this Fee Motion" Defendants' counsel "reduc[ed] the amounts requested by another five percent (5%), as indicated in the calculations below." (Weiner Decl. ¶ 9).

| Anti-SLAPP Motion | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Lodestar** |
| Joel Weiner | $495 | 49.4 | $24,453.00 |
| Ryan Larsen | $495 | 115.7 | $57,271.50 |
| Courtnee Draper | $400 | 46.9 | $18,760.00 |
| | Totals | 212 | $100,484.50 |
| **Requested After 5% Reduction** | | | **$95,460.28** |

| Appellate Proceedings | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Lodestar** |
| Joel Weiner | $495 | 102.4 | $50,688.00 |
| Ryan Larsen | $495 | 226.8 | $112,266.00 |
| Courtnee Draper | $400 | 80.9 | $32,360.00 |
| Lindsey Smith | $400 | 15.5 | $6200.00 |
| | Totals | 425.6 | $201,514.00 |
| **Requested After 5% Reduction** | | | **$191,438.30** |

| Renewed Anti-SLAPP Motion[2] | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Lodestar** |
| Joel Weiner | $495 | 1.6 | $792.00 |
| Ryan Larsen | $495 | 16.2 | $6480.00 |
| Joel Weiner | $535 | 36.9 | $19,741.50 |
| Ryan Larsen | $535 | 12.1 | $6473.50 |
| Katherine Motsinger | $415 | 5.1 | $2116.50 |
| | Totals | 54.1 | $35,603.50 |
| **Requested After 5% Reduction** | | | **$33,823.33** |

| Fee Motion | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Lodestar** |
| Joel Weiner | $535 | 14.9 | $7971.50 |
| Katherine Motsinger | $415 | 34.2 | $14,193.00 |
| | Totals | 49.1 | $22,164.50 |
| **Requested After 5% Reduction** | | | **$21,056.28** |

Defendants' counsel attach copies of billing records detailing hours worked on the Anti-SLAPP Motion, appellate proceedings, Renewed Anti-SLAPP Motion, and

---

[2] During this time, Defendants' billing rates increased. (*See* Weiner Decl. ¶ 14.)

the instant fee Motion. (*See* Weiner Decl. ¶¶ 12–15, Exs. 1–4.) Counsel further delineates the tasks performed as to each motion and the appeal and generally attests to the necessity of work performed. (*See generally* Weiner Decl.)

Plaintiffs, in turn, ask the Court to reduce the total award to $166,995.02. (Opp'n 21.) Plaintiffs primarily argue that Defendants should have limited the Anti-SLAPP Motion to a challenge on the legal sufficiency of the pleadings, thereby "efficiently" avoiding the relatively expensive evidentiary disputes inherent in a factual challenge. (Opp'n 1, 15–16.) But Plaintiffs do not and cannot cite authority requiring a party to limit an anti-SLAPP motion to the sufficiency of the pleadings to recover fees associated with that motion, nor do Plaintiffs cite authority justifying a reduced award based on the alleged "inefficiency" of a successful litigation strategy based on well-grounded, alternative legal theories (as opposed to inefficient execution of that strategy). On the contrary, courts regularly award full attorneys' fees associated with an anti-SLAPP motion challenging the legal *and* factual sufficiency of a complaint, even where either such challenge could have been independently successful. *See Wornick*, 213 F. Supp. 2d at 1228. The Court therefore rejects Plaintiffs' unfounded invitation to reduce a fee award based on second-guessing Defendants' decision to assert both a legal and factual challenge to Plaintiffs' complaint.

The Court instead considers the reasonableness of the hours expended on each motion and the appeal by employing a global view of reasonableness:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation.

*Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1335 (C.D. Cal. 2015), *appeal dismissed*

(Feb. 18, 2016) (stating that this approach reflects the "growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates").

*1. The Anti-SLAPP Motions*

Defendants request $95,460.28 for 212 hours worked on their initial Anti-SLAPP Motion, and Plaintiffs ask the Court to reduce this award by approximately 60% to $39,353.02. (Opp'n 17–18.) Plaintiffs further ask the Court to reduce Defendants' requested $33,823.33 in fees for the Renewed Anti-SLAPP Motion by 80%, to an award of $6766.47. (Mot. 19–20.)

"[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132. In its review, the Court may consider Defendants' counsels' expertise and "whether the case was overstaffed." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008); *see also Wilkerson v. Sullivan,* 99 Cal. App. 4th 443, 448 (2002) ("The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved."). Plaintiffs, as the award-seeking party, bear the burden of producing "substantial evidence" to support the amount sought. *Kearney v. Foley & Lardner,* 553 F. Supp. 2d 1178, 1185 (S.D. Cal. 2008).

Defendants' initial Anti-SLAPP Motion was twenty-five pages and filed with two brief declarations. (*See* Anti-SLAPP Motion.) Defendants nevertheless request compensation for far more than 100 hours collectively expended by three attorneys before Defendants filed the Anti-SLAPP Motion on January 23, 2015. (*See* Weiner Decl. Ex. 1.) These entries reveal duplicative billing practices and provide the Court with little to no evidence to support the necessity of the hours expended, let alone

sufficient documentation to satisfy Defendants' burden to set forth "substantial evidence" justifying those hours. *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce recovery of fees due to "poorly documented" billing).

For example, Ryan Larsen purports to have spent 9.2 hours on January 20, 2015 to "[r]esearch and draft anti-SLAPP motion" while Courtnee Draper spent 3.2 hours on the same day to "research issues for anti-SLAPP motion." (*See* Weiner Decl. Ex. 1 at 7.) One day before Defendants filed the Anti-SLAPP Motion, Ryan Larsen and Joel Weiner collectively spent 15.5 hours, in part, preparing to "meet and confer" with Plaintiffs' counsel (despite local rules requiring an earlier conference) and completing "multiple strategy conferences with attorneys." (Weiner Decl. Ex. 1 at 8.) Three attorneys then spent 6.8, 7.2, and 7.7 hours, respectively, to revise the Anti-SLAPP Motion on the day of filing but account for this time with vague entries that fail to explain the work. (Weiner Decl. Ex. 1 at 8–9.) Most of Defendants' remaining entries for hours worked before filing the Anti-SLAPP Motion similarly reflect unsubstantiated billing. (*See generally* Weiner Decl. Ex. 1.)

Moreover, while Plaintiffs' opposition to Defendants' Anti-SLAPP Motion was extensive and perhaps unnecessarily so, Defendants' entries reflecting time spent analyzing that opposition and drafting a reply likewise suffer from the same duplicity and lack of specificity plaguing the rest of Defendants' block-billing documentation. Indeed, the same three attorneys purport to have each spent immense time "analyzing" Plaintiffs' opposition and conducting ill-defined research on "issues related to" that opposition. (Weiner Decl. Ex. 1 at 10–13.)

Despite this lack of documentation and explanation, Defendants ask this Court to award them for 212 hours spent on the Anti-SLAPP Motion, a figure they claim is greatly reduced. (*See* Mot. 1.) But aside from the conclusory Weiner Declaration, Defendants offer little argument or evidence going to the reasonableness of the hours expended; they instead offer the unsupported averment that all time spent was

necessary due to "the quality of the work, the defenses presented, and the end result." (Mot. 12.) This is insufficient to satisfy Defendants' burden and warrants a significant reduction. *Christian Research*, 165 Cal. App. 4th 1329 (noting that "counsel may not submit a plethora of noncompensable, vague, blockbilled attorney time entries and expect particularized, individual deletions as the only consequence").

Defendants' request of $33,823.33 for 54.1 hours worked on their Renewed Anti-SLAPP Motion is even more tenuous. The Renewed Anti-SLAPP Motion amounts to a five-page memorandum detailing the Ninth Circuit's rulings, summarizing arguments and procedural history in the initial Anti-SLAPP Motion, and requesting that the Court grant the Anti-SLAPP Motion. (Renewed Anti-SLAPP Motion 1–5.) Defendants' counsel submit documentation claiming that they spent more than 50 hours on their Renewed Anti-SLAPP Motion before they filed it on January 14, 2019, including hours purportedly preparing their reply brief *before Defendants filed their moving papers.* (*See* Weiner Decl. Ex. 3 at 2–15.) One day after Defendants filed their five-page memorandum, Ryan Larsen spent 1.8 hours to "[r]eview and analyze new anti-SLAPP cases previously cited by Plaintiffs to research new cases" and Joel Weiner reviewed "practice guide, motion for reply ideas." (Weiner Decl. Ex. 3 at 16.) These billing entries facially evidence wasteful, duplicative, and inexplicable billing practices this Court cannot condone, let alone compensate. *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982) ("If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.").

Based on review of Defendants' billing entries, analogous case law reducing awards due to excessive hours worked, and the Court's global understanding of this litigation, the Court finds that 266.1 hours spent by Defendants' counsel on two relatively straightforward motions is excessive and must be reduced. *Lee-Tzu Lin v.*

*Dignity Health-Methodist Hosp. of Sacramento*, No. CIV. S-14-0666 KJM (CKDx), 2014 WL 5698448, at *4 (E.D. Cal. Nov. 4, 2014) ("Given the non-complex nature of the anti-SLAPP motion, the 211.25 hours sought by defendants is high.") (collecting cases). The Court therefore finds a 50% downward adjustment in Defendants' requested fees in conjunction with the Anti-SLAPP Motion and the Renewed Anti-SLAPP Motion is appropriate and awards Defendants **$64,641.81** for their fees incurred in connection with those motions. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (stating that the Ninth Circuit does "not quarrel with the district court's authority to reduce hours that are billed in block format").

*2. Appellate Proceedings*

Plaintiffs ask the Court to reduce Defendants' request for $191,438.30 for the appellate proceedings by approximately 45%, to $104,017.44. (*See* Opp'n 18–19.) As in connection with the Anti-SLAPP Motions, the Court is concerned with overstaffing, waste, and ambiguous documentation in connection with work on the appellate proceedings.

Ryan Larsen, for example, submits several large time entries with vague descriptions such as 7.8 hours to "[r]esearch and draft Respondent's Brief including statement of case and facts record on appeal"; 7 hours to "[r]esearch and draft respondent's brief on appeal including introduction, statement of facts, standard of review"; and 6 hours to "[r]esearch and draft respondent's brief on appeal re intentional interference claims under CA and Utah law." (*See* Weiner Decl. Ex. 2 at 9–12.) Courtnee Draper likewise submits large, inexplicable time entries that appear to duplicate work performed by other attorneys. (*See, e.g.*, Weiner Decl. Ex. 2 at 20–21) (4.3 hours to "strengthen arguments, look for missing places to bolster case law, and ensure free of typographical errors.") In total, Defendants submit 38 pages of such time entries equaling a "reduced" total of 425.6 hours spent in the appellate proceedings. (*See* Weiner Decl. Ex. 2 at 2.)

Similar to above, based on review of Defendants' billing documentation and their scant explanation for the exorbitant number of hours expended, the Court finds that Plaintiffs' requested 45% downward reduction in the hours worked on the appellate proceedings is appropriate. The Court therefore awards Defendants **$105,291.07** for work performed in connection with those proceedings.

*3. The Fee Motion*

Plaintiffs ask the Court to reduce Defendants' requested $21,056.28 in fees for hours worked on the instant fee Motion by approximately 20%, to an award of $16,854.92. (Opp'n 20–21). Like the motions and appellate proceedings discussed above, the invoices submitted in support of the fee Motion do not constitute the requisite "substantial evidence" to support the amount sought. *Kearney,* 553 F. Supp. 2d at 1185. For example, Joel Weiner and Katherine Motsinger purport to have collectively spent dozens of hours "researching Ninth Circuit standards," this Court's previous "rulings on attorneys' fees motions," and "attorney declarations in other cases to serve as support for rates." (*See* Weiner Decl. Ex. 4.)

Defendants provide no further details as to the 49.1 hours worked on the instant Motion and the professed necessity of two highly capable attorneys at a distinguished law firm spending excessive hours researching well-established legal standards. This is particularly true where, as here, Defendants' counsel is highly regarded and admittedly experienced in the practice of such law. *Maughan v. Google Tech, Inc.,* 143 Cal. App. 4th 1242, 1251 (2006) (upholding finding that $112,288.63 in fees and costs was unreasonable where prevailing party's counsel acknowledged they were "old hats at [anti-]SLAPP" litigation). Moreover, given the record before it, the Court cannot account for the apparent duplicity of the work performed by Joel Weiner and Katherine Motsigner, as both attorneys are credited with the same tasks of "research," "drafting," and "revision." (*See* Weiner Decl. Ex. 4.)

For these reasons, the Court finds that Plaintiffs' request for a 20% downward reduction of Defendants' $21,056.28 fee request is reasonable and awards Defendants **$16,854.02** for their fees incurred in conjunction with the instant Motion.

**C.    Costs**

Defendants seek to recover $1595.54 in costs for filing fees, printing, and other expenses related to the appeal, which they substantiate with detailed records. (Weiner Decl. ¶ 16, Ex. 5.)  Plaintiffs agree to pay these costs. (Opp'n 21.)  As such, Defendants are entitled to recover their costs. *See* Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs.").  The Court awards Defendants **$1595.54** in costs.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion (ECF No. 143) and **awards Defendants $186,777.90 in attorneys' fees and $1595.54 in costs**.

**IT IS SO ORDERED.**

March 2, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**